# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2988

_____

|  |  |  |
|---|---|---|
| Benjamin Root and Amy Root, | * | |
| Individually and as Co-Next Friends | * | |
| of Elizabeth Root, and Elizabeth | * | |
| Root, A Minor, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| | * | |
| New Liberty Hospital District, | * | |
| d/b/a Liberty Hospital, | * | |
| | * | |
| Appellant. | * | |
| | * | |
| | * | |
| | * | |
| _____ | * | |
| | * | |
| Missouri Hospital Association, | * | |
| | * | |
| Amicus Curiae | * | |
| on Behalf of Appellant. | * | |

_____

Submitted:  February 17, 2000

Filed:  April 6, 2000

_____

Before WOLLMAN, Chief Judge, and BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Benjamin, Amy, and Elizabeth Root claimed that Liberty Hospital violated the Emergency Medical Treatment and Active Labor Act (EMTALA), *see* 42 U.S.C. § 1395dd, when it discharged Amy Root, then pregnant with Elizabeth, without properly performing the medical screening and stabilization that the statute requires. *See* 42 U.S.C. § 1395dd(a), § 1395dd(b), § 1395dd(c). The Roots sued the hospital, asking for "those damages available for personal injury under the law of the State in which the hospital is located." *See* 42 U.S.C. § 1395dd(d)(2)(A).

Under current Missouri law, the state's political subdivisions, such as hospital districts, *see* Mo. Ann. Stat.§ 206.010.2, are immune to suits for negligence and intentional torts. *See Aiello v. St. Louis Community College District,* 830 S.W.2d 556, 558 (Mo. Ct. App. 1992). Liberty Hospital, a public entity for which the New Liberty Hospital District was established, therefore moved to dismiss the Roots' complaint on the ground of sovereign immunity, *see* Mo. Ann. Stat. § 537.600. The district court denied the motion. The hospital appealed, and the appeal is properly before us under the so-called collateral order doctrine. *See generally Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 n.2 (8th Cir. 1995). We affirm the district court.[1]

I.

Liberty Hospital offers two substantive arguments with respect to the interaction between the Missouri sovereign immunity statute and the federal EMTALA. The Roots assert, however, that we need not consider either of those arguments because the

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Missouri statute "by its very terms" applies in cases outside the scope of the EMTALA.

The Roots maintain that because the Missouri sovereign immunity statute applies only to tort liability, *see* Mo. Ann. Stat. § 537.600.1, and the EMTALA establishes a strict-liability regime, the Missouri statute somehow "provides no shield for [the hospital] from an EMTALA action." We recognize that, as the Roots argue, we have characterized the EMTALA as providing for strict liability "[i]n [a] sense," *Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir. 1996) (*en banc*). We are, however, unable to see how this can possibly be helpful to the Roots' case, because there are only three categories of civil liability, namely, tort, contract, and quasi-contract, and a case in which the plaintiff relies on principles of strict liability necessarily sounds in tort. *See generally World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 n.11 (1980). While we have discovered no Missouri case on the question, other jurisdictions have readily decided that the general principle extending immunity to suit for torts applies to suits based on a strict-liability theory. *See*, *e.g.*, *City of Treasure Island v. Provident Management Corp.*, 730 So. 2d 357, 359, 361 (Fla. Dist. Ct. App. 1999). We see no reason to doubt that Missouri courts would do the same thing, and we therefore find the Roots' argument unpersuasive.

II.

The hospital asserts that the EMTALA explicitly incorporates Missouri's sovereign immunity statute because the federal statute provides that a plaintiff may obtain "those damages available for personal injury under the law of the State in which the hospital is located," *see* 42 U.S.C. § 1395dd(d)(2)(A). The hospital therefore maintains that the federal statute prevents the Roots from suing because Missouri's sovereign immunity statute is part of Missouri law and is thus incorporated into the federal statute. We disagree with this reasoning.

Courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit. *See generally Keene Corp. v. United States,* 508 U.S. 200, 208 (1993). Although the EMTALA adopts state standards to determine what damages are available in civil enforcement actions, we do not believe that it incorporates state law that is unrelated to damages.

The hospital justifies its reading of the statute by pointing out that a party prevented from suing is also necessarily prevented from receiving damages. This argument turns the matter upside down, however, because it fails to recognize that sovereign immunity precludes liability altogether, and not merely the availability of damages after liability is established. We therefore believe that Missouri's sovereign immunity statute is not incorporated into the federal statute. *Cf. Power v. Arlington Hospital Association*, 42 F.3d 851, 862 (4th Cir. 1994), holding that the EMTALA adopts state-imposed damages caps; *but see Hardy v. New York City Health and Hospitals Corp.*, 164 F.3d 789, 794 (2nd Cir. 1999), giving the EMTALA's civil enforcement provision a "broader" reading and holding that a state notice-of-claim requirement, which "is a 'condition precedent' to suing for damages in a personal injury action," is "part of the applicable 'law of the State.' "

III.

The federal statute also states that the "provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section," *see* 42 U.S.C. § 1395dd(f). The hospital argues in the alternative that the EMTALA does not preempt the Missouri sovereign immunity statute. We believe, however, that Missouri's sovereign immunity statute cannot fairly be described as a "State or local law *requirement*" (emphasis added). The Missouri sovereign immunity statute does not require, command, or instruct anyone to do anything: Instead, it informs potential plaintiffs that they may not sue public entities unless sovereign immunity is expressly waived. *See* Mo. Ann. Stat. § 537.600.1. To accept Liberty Hospital's argument that the state statute requires "the courts to grant

-4-

political subdivisions immunity from personal injury lawsuits" (subject to certain exceptions not relevant in this case) would, we think, require us to give the state statute a distorted and unnatural construction.

Federal law preempts state law when the state law conflicts with the federal law. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *see also National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999). Missouri's sovereign immunity statute is in direct conflict with 42 U.S.C. § 1395dd(d)(2)(A). The supremacy clause, *see* U.S. Const. art. VI, cl. 2, therefore dictates that Missouri's sovereign immunity statute must yield. *See generally State of Missouri v. City of Glasgow*, 152 F.3d 802, 805 (8th Cir. 1998).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.