

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI EX REL CITY OF
LEE'S SUMMIT, MISSOURI,

      **Relator,**

v.

HONORABLE KENNETH R.
GARRETT, III, JUDGE FOR THE 16TH
JUDICIAL CIRCUIT OF MISSOURI,

      **Respondent.**

**WD82262**

**OPINION FILED:**

**February 13, 2019**

---

**Original Proceeding on Petition for Writ of Prohibition**

**Before Writ Division:**
**Alok Ahuja, P.J., Gary D. Witt, and Thomas N. Chapman, JJ.**

The City of Lee's Summit ("the City") seeks a writ of prohibition directing the Circuit

Court of Jackson County to grant the City's motion to dismiss claims against it.  In the

underlying suit Kurt Pycior ("Plaintiff") claims that he was injured, in part, due to the City's

failure to properly inspect property and enforce its ordinances.  The City claims it is entitled to

sovereign immunity against Plaintiff's claims.  We issued a preliminary writ of prohibition and

now make that writ permanent.

## Factual and Procedural Background

Plaintiff filed the underlying suit in the Circuit Court of Jackson County on May 4, 2018. According to facts alleged in the petition,[1] on April 18, 2017, Plaintiff suffered serious injuries when he fell from an unguarded retaining wall. The wall was situated between two differently elevated tracts of a parking lot located at the Summit Fair shopping district within the City. Various corporations, also named in the petition ("Corporate Defendants"), either designed and built the retaining wall and parking lot (which were constructed between 2009 and 2010), or owned or operated the real estate where the accident occurred. The City did not own or operate the property where the retaining wall was located.

The City adopted portions of the International Building Code ("IBC") as its regulation governing, among other things, the design and construction of retaining walls (the "Building Code).[2] In particular Sec. 7-224 of the Building Code provided: "Guards are required at retaining walls over thirty (30) inches above grade when walking surfaces are within ten (10) feet of the high side of the retaining wall." In order to construct the retaining wall and parking lot, the Corporate Defendants were required to obtain building permits from the City, and the

---

[1] "In reviewing a motion to dismiss we examine the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorable to plaintiff to determine whether they invoke principles of substantive law." *Aiello v. St. Louis Cmty. Coll. Dist.*, 830 S.W.2d 556, 558 (Mo. App. E.D. 1992).

[2] Lee's Summit Ordinance No. 7369 adopted the 2012 IBC and was in effect at the time of the subject incident. Lee's Summit Ordinance No. 6399 adopted the 2006 IBC and was in effect at the time of the building permit and inspections at issue.

City issued building permits after its agents inspected (or failed to inspect) [3] the site or design plans.

The City collected the applicable fees and issued the permits which allowed the Corporate Defendants to construct the retaining wall. Plaintiff alleged that the retaining wall was not in conformity with the Building Code, as it did not include a guard, fence, or barrier.

In his petition, Plaintiff claimed that the City's negligent inspection (or lack of inspection) contributed to his injuries and that aggravating circumstances warranted an award of punitive damages. In its Motion to Dismiss the City claimed sovereign immunity. The trial court denied the motion and the City sought a writ of prohibition in this Court.

**Discussion**

We review *de novo* whether a defendant claiming sovereign immunity is entitled to dismissal from suit for failure to state a cause of action. *Thomas v. City of Kansas City*, 92 S.W.3d 92, 96 (Mo. App. W.D. 2002). "The pleadings are liberally construed, and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Id.; see also State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 82 (Mo. banc 2008). However, "Missouri courts have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009).

---

[3] Plaintiff's petition states that Lee's Summit did conduct an inspection or review (but did so negligently) and also alleges that Lee's Summit failed to conduct an inspection.

3

A writ of a prohibition is an extraordinary remedy. *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 45 (Mo. banc 2017). It is available:

> (1) to prevent the usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*Id.* (quoting *State ex rel. Missouri Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 603 (Mo. banc 2012)). This Court is typically reluctant to exercise our authority to issue a writ of prohibition to correct interlocutory error. *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 500 (Mo. App. E.D. 1985). However,"[i]f a party cannot state facts sufficient to justify court action or relief, it is fundamentally unjust to force another to suffer the considerable expense and inconvenience of litigation. It is also a waste of judicial resources and taxpayer money." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 330 (Mo. banc 2009). "A writ of prohibition is appropriate to correct interlocutory error where parties do not have adequate remedy by way of appeal." *State Ex rel. City of Nevada v. Bickel*, 267 S.W.3d 780, 782 (Mo. App. W.D. 2008).

"Prohibition is particularly appropriate when the trial court, in a case where the facts are uncontested, wrongly decides a matter of law thereby depriving a party of an absolute defense." *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 101 (Mo. App. S.D. 1996) (quoting *State ex rel. Feldman v. Lasky*, 879 S.W.2d 783, 784–85 (Mo. App. E.D. 1994)). Where it applies, sovereign immunity is an absolute defense. *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 615 (Mo. banc 2002). Prohibition is therefore an appropriate remedy when "a defendant is clearly entitled to immunity." *State ex rel. Bd. of Trs. of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 355 (Mo. banc 1992).

Under the common law municipalities are immune from tort liability "when engaged in 'governmental' functions, but not 'proprietary' functions." *Richardson,* 293 S.W.3d at 136–37. Governmental functions are "performed for the common good of all." *Parish v. Novus Equities Co.,* 231 S.W.3d 236, 242 (Mo. App. E.D. 2007). Proprietary functions entail acts that are performed for the special benefit or profit of the municipality. *State ex rel. City of Marston v. Mann*, 921 SW.2d 100, 102 (Mo. App. S.D. 1996). Proprietary functions often involve a municipality providing services or conveniences to its citizens. *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. App. W.D. 2009).

Plaintiff maintains that the City was engaged in a proprietary function when it negligently inspected (or failed to inspect) the retaining wall and then issued its building permit. Plaintiff claims no other exception to sovereign immunity.[4] We must therefore determine whether Plaintiff has pled with specificity facts which indicate that the City was engaged in a proprietary function when it issued its building permit. *Richardson*, 293 S.W.3d at 137.

Plaintiff's Petition, in pertinent part, provides as follows:

> 39. Upon information and belief, Defendant Lee's Summit issued building permits after its agents and/or employees inspected the site and or/design plans and collected a fee[5] for doing so.

---

[4] "A municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment; (2) where the injury is caused by the dangerous condition of the municipality's property; (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function; and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy." *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. App. W.D. 2009) (internal citations omitted). Plaintiff's Petition alleged no facts that encompass the other exceptions and he makes no argument in support of any other exception to sovereign immunity. As a consequence, the only exception for our consideration is whether the City was engaged in a proprietary function in the course of the conduct alleged in the Petition.

[5] The petition does not indicate the amount charged for the permit fee. Allegations regarding the amount of the permit fee (or its purpose) were only raised in responsive arguments and were not included in the petition.

\*\*\*\*

84.  Defendant Lee's Summit, pursuant to City Code and Regulation, had a duty to inspect the retaining wall to insure its safety and compliance with all applicable City Codes.  Such duty to conduct City Inspections is and was a mandatory and ministerial action that was to be taken by Defendant Lee's Summit through its agents and employees, and more specifically, by its inspectors.

85. In conducting construction inspections for compliance with City Codes, Defendant Lee's Summit, through its authorized agents, employees, and inspectors would conduct themselves in such a fashion that they were performing ministerial activities.  The failure to install a guardrail fence, barricade or other safety feature along the retaining wall was open and obvious to any inspector or inspectors, if such inspection had in fact taken place.

86. Specifically, the absence of a guard, fence or barricade on of [*sic*] a retaining wall over thirty inches above grade and the high side of the retaining wall was within ten feet of a walking surface would have been open and obvious to any inspection.  Such condition, left unremedied, would be a condition that was not only dangerous and defective, but in violation of City Code.

87. Failure of the Defendant Lee's Summit to inspect was negligent and was a failure to perform non-discretionary[6] duties.

When we determine whether sovereign immunity bars a claim, our "analysis focuses on the activity giving rise to the injury to determine whether the activity was an exercise of a governmental or a proprietary function." *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp.*, 843 S.W.2d at 358.  Promulgation of a building code by a municipality is an exercise of the police power conferred on it by the legislature for health and safety. *Engelage v.*

---

[6] Throughout his Petition, Plaintiff contended that certain duties are non-discretionary.  The distinction between discretionary and non-discretionary (ministerial) duties is an issue when analyzing whether public employees are entitled to claim official immunity. *E.g.*, *Rhea v. Sapp*, 463 S.W.3d 370, 376 (Mo. App. W.D. 2015). The distinction between ministerial and discretionary duties is not relevant in determining whether a function is proprietary or governmental.

*City of Warrenton*, 378 S.W.3d 410, 414–15 (Mo. App. E.D. 2012). "It is well established that enforcement of ordinances is a governmental function." *Nevada v. Bickel*, 267 S.W.3d at 783.

In *Nevada v. Bickel*, the claimant alleged that the City of Nevada had charged a fee for an electrical inspection that was woefully inadequate. *Id.* The occupant of the dwelling that had been inspected died of electrocution and the City of Nevada was sued for conducting a negligent inspection. *Id*. at 782. The claimant in *Nevada v. Bickel* (like Plaintiff herein) argued that the inspection was so negligent it was tantamount to performing no inspection, and that its only real purpose was pecuniary (to collect the fee), and thus a proprietary function. *Id*. at 783. Granting a permanent writ of prohibition based on sovereign immunity, the *Nevada v. Bickel* court stated: "We find neither assertion persuasive. Charging a fee for a public service does not transform a governmental function into a proprietary one. Nor does negligent performance of a public function, even grossly negligent performance, make a governmental function proprietary." *Id.* (internal citations omitted).

Plaintiff argues that, because there may have been no inspection before the City of Lee's Summit issued its permit and charged its fee, the facts herein are distinguishable from *Nevada v. Bickel* (where the inspection was alleged to be grossly inadequate). Plaintiff cites no basis for this distinction, and we find none.

"[F]unctions that are otherwise governmental are not transformed into proprietary functions merely because they generate a profit or are accompanied by a fee." *Crouch v. City of Kansas City*, 444 S.W.3d 517, 524 (Mo. App. W.D. 2014). When assessing whether an action is governmental or proprietary we do not assess the particular performance of a specific event but

7

rather the general nature of the activity being performed.  *State ex rel. Bd. of Trustees of City of N. Kansas City Mem'l Hosp*., 843 S.W.2d at 359.

> In examining the question of whether an activity is governmental or proprietary, the nature of the particular defendant's conduct is often less important than the generic nature of the activity.  Rather than examining the motives of the city employees who were performing the function, the analysis focuses on the motives of the legislature that conferred the power upon all municipalities…. The status of a function of a city does not vary from day to day with the whims of the particular people elected or appointed to municipal offices.

*Id*.

Paragraph 84 of Plaintiff's petition indicates that the City had a "duty to inspect the retaining wall to insure its safety and compliance with all applicable City Codes."  Providing the petition in question the broadest interpretation of its allegations, Plaintiff claims that the City breached its duty to properly enforce its building code.  "The generic nature of the inspections is to enforce ordinances designed to protect public health and safety.  It is well established that enforcement of ordinances is a governmental function." *Nevada v. Bickel*, 267 S.W.3d at 783.

An omission, or failure to act, may be the basis for a claim of negligence, and such failure to act may be in the course of carrying out a governmental function.  *See Aiello v. St. Louis Community College,* 830 S.W.2d 556, 559 (Mo. App. E.D. 1992).  For example, in *Aiello* the Plaintiffs claimed that a school district had failed to discover and stop fraudulent expense reimbursement requests.  *Id*.  The *Aiello* court found that the alleged omissions were in the course of the district's duty to manage its funds, and thus a governmental function entitled to sovereign immunity.  *Id.*

Regardless of whether Plaintiff alleges an act or omission that constituted a breach of the City's duty of care to enforce its building code, the City was engaged in a governmental function

in doing so. The fact that the City charged a fee for issuance of a permit did not transform enforcement of its building code into a proprietary function. *Crouch,* 444 S.W.3d at 524. Because the alleged negligent acts (or omissions) of the City were in the course of carrying out the governmental function of enforcing its building code, the City is entitled to sovereign immunity.

## Conclusion

Because the City was entitled to an absolute defense of sovereign immunity, the circuit court erred in overruling the City's Motion to Dismiss.[7] Accordingly, our writ is now made permanent. The circuit court shall take no further action against the City other than entering an order dismissing all of the claims against the City with prejudice. Nothing herein should be read to affect any of the remaining claims against the other named defendants in the underlying action pending before the circuit court.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

All concur.

---

[7] In its Motion to Dismiss the City also claimed that Plaintiff was not entitled to seek punitive damages against the City. Because the City was entitled to sovereign immunity with respect to all claims, we have not separately addressed the issue of punitive damages.